## Silverman *v.* Polis, et al., Appellants.

Argued June 12, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Frank J. Eustace, Jr.,* for appellants.

*Leon W. Silverman,* for appellee.

OPINION BY CERCONE, J., September 23, 1974:

This case is an appeal from an order denying defendant's petition to strike[1] or open a default judg-

---

[1] The default judgment around which this case turns is valid on its face. Therefore the lower court's refusal to strike it was totally proper and the appeal therefrom is completely without merit. No further discussion is necessary concerning this portion of defendant's appeal.

ment. Plaintiff's Complaint in Assumpsit was filed on May 26, 1971, seeking payment of his appraisal fee and for testifying, as an expert witness, in a land condemnation proceeding. On December 19, 1972, the plaintiff had judgment entered against the defendants for failure to file an answer to the complaint.

Following the filing of the complaint, the defendants sought to take plaintiff's deposition. Orders staying all proceedings were issued by the lower court on June 18, 1971, and July 28, 1971. The deposition was finally scheduled on November 3, 1971, and taken on December 7, 1971. The defendant filed interrogatories on February 24, 1972. On March 10, 1972, the plaintiff obtained an order, ex parte, removing the stay of proceedings. Two months later the plaintiff also filed interrogatories. On July 21, 1972, the court ordered the plaintiff to answer defendant's interrogatories within sixty days or suffer a judgment non pros. Sixty days later the answers were filed. Ten days thereafter the defendants moved for more responsive answers. On December 4, 1972, the court denied this motion, but without prejudice to defendant's right to file additional interrogatories. On December 12, 1972, the defendants filed the additional interrogatories and served them on the plaintiff the following day. For some reason these were not docketed until after December 19, 1972, on which day the plaintiff had the default judgment entered against the defendants. The pace at which both parties dealt with this case prior to the default judgment is best characterized as glacier-like. We can only look askance at default judgments taken under such circumstances.

In order to open a default judgment in an action in assumpsit the defendant must establish three points, (a) that the petition to open was promptly filed, (b) that a legitimate explanation exists for the delay that occasioned the default judgment and (c) that there

is a meritorious defense. *Fox v. Mellon,* 438 Pa. 364, 264 A. 2d 623 (1970). It must be borne in mind when considering the opening of a default judgment "(a) that the entry of a judgment by default finds its authority in the law (Pa. R. C. P. 1037, 1047, 1511) and (b) that, even though authorized by the law, such judgments are subject to opening if equitable considerations so demand." *Kraynick v. Hertz,* 443 Pa. 105, 111, 277 A. 2d 144 (1971). Since opening judgment is an equitable action, reversal by an appellate court of a lower court's opening or refusing to open judgment is to be done only when there is "an error of law or a clear, manifest abuse of discretion." *Balk v. Ford Motor Co.,* 446 Pa. 137, 140, 285 A. 2d 128 (1971).

In the instant case the petition to strike or open was filed on January 16, 1973, less than one month after the default judgment was entered, which, under the circumstances of this case, met the requirement of prompt filing. This leaves the issues of legitimate explanation and meritorious defense for consideration. To explain their delay in filing an answer to plaintiff's complaint, the defendants assert that the default judgment was taken without notice while they were still awaiting answers. Whether this is a legitimate explanation to justify opening the default judgment is not an easily answered question. What in one set of circumstances may be an unreasonable excuse may in another set be a legitimate explanation. On the other hand, some excuses are never legitimate explanations, for example, a busy trial list and business appointments, *Walters v. Harleysville Mutual Casualty Co.,* 417 Pa. 438 (1965), or a belief that opposing counsel was not serious about enforcing an order permitting default judgment upon failure to answer, *Triolo v. Philadelphia Coca Cola Bottling Co.,* 440 Pa. 164 (1970).

One very frequent element in the sets of circumstances of cases where a default judgment has been upheld is notice to opposing counsel of the intent to enter a default judgment. Conversely, the lack of such notice is frequently singled out as an important factor justifying the opening of a default judgment; e.g., *Triolo v. Philadelphia Coca Cola Bottling Co.,* supra. *Seltzer v. Ashton Hall Nursing and Convalescent Home,* 221 Pa. Superior Ct. 127 (1972); *Ab v. Continental Imports,* 220 Pa. Superior Ct. 5 (1971); *Fox v. Mellon,* supra; *Kraynick v. Hertz,* supra. While it is true that, beyond that contained in the complaint,[2] further notice is not a legal prerequisite for obtaining a default judgment, it is relevant on this point to consider portions of the Code of Professional Responsibility of the American Bar Association, incorporated into the Pa. R. C. P. as Rule 205:

"Canon 7. A Lawyer Should Represent a Client Zealously Within the Bounds of the Law.

EC 7-38 A lawyer should be courteous to opposing counsel and should accede to reasonable requests regarding court proceedings, settings, continuances, waiver of procedural formalities, and similar matters which do not prejudice the rights of his client. He should follow local customs of courtesy or practice, unless he gives timely notice to opposing counsel of his intention not to do so. A lawyer should be punctual in fulfilling all professional commitments.

. . .

DR 7-106 Trial Conduct

---

[2] A plaintiff seeking to enter a default judgment must be in substantial compliance with Pa. R. C. P. 1361 by having the phrase "or a default judgment may be entered against you" contained in his notice to plead. Failure to do so leaves the judgment subject to a motion to strike. *Slaughter v. Gruntz,* 227 Pa. Superior Ct. 164 (1974).

(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

. . .

(5) Fail to comply with known local customs of courtesy or practice of the bar or a particular tribunal without giving to opposing counsel timely notice of his intent not to comply."

It is readily apparent from a comparison of the record in this case with this limited excerpt from Canon 7 that neither counsel approached even minimal compliance with these sections, not to mention the spirit behind their adoption. Be that as it may, it is patently obvious that attempts to utilize every niggling procedural point for maximum advantage demean the legal profession, reducing its procedures to a vulgar scramble. No doubt it is for this reason that in so many cases, notice of intent to take a default judgment, or the lack thereof, is properly made a significant factor in reaching a just decision.[3]

In this case the lower court's order staying the proceedings was removed ex parte by the plaintiff nine months before the default judgment was taken. While it is true that the defendants could have discovered this fact, the events occurring between the removal of the stay order and the taking of the default judgment were not such that would suggest to the defendants that removal of the stay order was being contemplated or even possible for that matter. In fact, the events would suggest quite the opposite. The discovery process was still grinding on. The court had given its leave for the defendants to file additional interrogatories, which the defendant had done. The plaintiff's interrogatories were still outstanding,

---

[3] We do not base our decision on the parties' contravention of Canon 7, but rather upon the facts of this case. However, we feel it would be appropriate for the Procedural Rules Committee to incorporate into Pa. R. C. P. 1037 a provision requiring notice to opposing counsel prior to entering a default judgment.

the answers to which had yet to be filed. The record indicates that neither party was compulsively punctual. Since defendants' answer to the complaint would reflect facts learned through the discovery process, it was not unreasonable for them to await reply to their interrogatories before filing their answer to the complaint, especially in view of their mistaken, but understandable, belief that all proceedings were still subject to the stay order. Moreover, defendants' delay in filing their answer to the complaint was not a significant deviation from the behavioral pattern of delay exhibited by the plaintiff himself. In view of the foregoing we must conclude that the defendants offered a legitimate explanation for their delay in filing an answer to plaintiff's complaint.

The final point to be considered is whether the defendants have demonstrated a meritorious defense. In their petition to open, defendants assert that they have a complete defense to the plaintiff's claim, a point on which they expand in their supplemental memorandum. Defendants contend that, in dealing with the plaintiffs, they were acting in their capacity as agents of a disclosed principal.[4] If this is so, and if there are no overriding facts, then plaintiff's claim would be against the principal, not the agents. Restatement of Agency 2d, §144 et seq. 3 C.J.S. §447 Agency.

In view of the foregoing we conclude that defendants have met their burden in seeking to have the default judgment against them opened. Accordingly, the lower court's order refusing to open the default judgment is reversed.

PRICE, J., dissents.

---

[4] This case arose because the plaintiff had testified at a land condemnation hearing as an expert witness for the landowner, a Mr. Kerbeck. It was he for whom the defendants allege they acted as agents, fully disclosing to plaintiff the name of their principal.